CARMEN DOLORES, ANTONIO JUAN, DIEGO LUIS y MANUEL JOAQUÍN RODRÍGUEZ, este último menor de edad representado por su padre con patria potestad ANTONIO RODRÍGUEZ AVILÉS, demandantes y apelados, *v.* GREGORIO CORTÉS RODRÍGUEZ, demandado y apelante, y EL MUNICIPIO DE UTUADO, demandado.

Núm. 7035.—*Sometido:* Mayo 26, 1936. *Resuelto:* Mayo 26, 1937.

*Antonio Suliveres,* abogado del apelante; *Luis Mercader,* abogado de los demandantes apelados; *Francisco R. Flores,* abogado del municipio.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

Gregorio Cortés, demandado en una acción reivindicatoria, apela de una sentencia adversa y dice: primero, que la corte de distrito cômetió error al concluir que después del ciclón (queriendo decir con ello el de 1928, conocido con el nombre de Ciclón de San Felipe), el valor de la casa en cuestión "no podía ser más de $250"; segundo, que el juez de distrito (quien basó su decisión en parte en el fundamento de que Ana Olmo había admitido el hecho de que vivía gente en la casa después del ciclón, y que el precio de $200 pagados por Cortés llevaba a la conclusión de que él adquiría algo más que el derecho muy discutible del uso de un pequeño solar) erró al no llegar a la conclusión de que Cortés adquirio de Ana Olmo tan sólo el derecho que ella pudiera haber tenido en el solar puesto que la casa había sido destruída por el huracán; y tercero, al concluir que Cortés después de adquirir la casa en malas condiciones completó la destrucción de la misma y entonces construyó la nueva casa de concreto de que ahora está en posesión.

Cualquier defecto técnico en el razonamiento de la corte de distrito no exigiría la revocación o modificación de

la sentencia si la prueba es suficiente para sostener sus conclusiones sobre el valor de la casa o sobre el valor de lo que quedó de ésta después del ciclón. Los testigos del demandado excedían grandemente en número a los de los demandantes. La prueba de estos últimos tendió a demostrar que la casa, inspeccionada por éstos algún tiempo después del ciclón, se hallaba en condiciones regulares y estaba ocupada. La prueba del demandado tendió a demostrar que la casa descrita por estos testigos no era la casa en controversia y que la casa en controversia había sido más o menos completamente demolida por el huracán y no por Cortés. Quizás baste decir que hubo suficiente prueba para sostener la conclusión de la corte de distrito de que la casa, o lo que de ésta quedó después del huracán, valía $200 y que Cortés era responsable de esta suma. Empero, no es necesario que basemos nuestra decisión en ese punto.

■ Enrique González, de quien Ana Olmo adquirió la casa, había obtenido posesión de la misma bajo un supuesto contrato verbal con el padre de los demandantes, que eran menores. No hubo autorización judicial para la enajenación de la propiedad de los demandantes y ni González ni Ana Olmo adquirieron título alguno. Cortés, desde luego, nada adquirió al comprar de Ana Olmo.

■ El Municipio de Utuado concedió en 1900 el uso de un solar por un período de tiempo indefinido para que se construyera un edificio sobre el mismo. El cesionario construyó una casa, que en 1925 vino a ser propiedad de los demandantes. Podría admitirse que lo que quedó de la casa después del ciclón, tenía muy poco o ningún valor intrínseco y no fué en realidad utilizado por Cortés en la fabricación de la casa de concreto. Podría igualmente admitirse que el cesionario del municipio no podía transferir su derecho al uso del solar y que los demandantes nunca adquirieron derecho alguno a tal uso. Podría admitirse también que si los demandantes tenían semejante derecho, el mismo quedó ex-

tinguido cuando la casa fué destruída por el huracán. Podría admitirse además que los demandantes no tenían contra el municipio derecho legal a preferencia al hacerse una nueva concesión para que se construyera otra casa sobre el mismo solar. No obstante, los demandantes como dueños de los escombros, tenían un derecho moral y en equidad a tal preferencia. No es probable que el municipio hubiera hecho otra concesión a un extraño sin notificar a los demandantes y sin celebrar una vista, o de que hubiera rechazado la reclamación de los demandantes a tal preferencia de ser por éstos alegada. Véanse: *Casanovas* v. *Municipio de Mayagüez*, 31 D.P.R. 281; *Municipio de Añasco* v. *Vélez*, 48 D.P.R. 636; *Municipio de Guánica* v. *García*, 48 D.P.R. 816. Así pues, desde el punto de vista de cualquier persona interesada en obtener una concesión del municipio, existían ciertas ventajas incidentales a la propiedad de los escombros que como evidencia de una posesión material o implícita y de por lo menos un derecho a reconstruir, incompleto o en equidad, tenían cierto valor monetario. Con anterioridad al día del huracán había una pared medianera de hormigón entre la casa de los demandantes y una pequeña casa contigua perteneciente ya a Ana Olmo. Unos días después del ciclón Cortés compró esta pequeña casa a Ana Olmo. Más tarde reparó la pared medianera. La casa era demasiado pequeña para su familia y su deseo era construir una casa mayor en el solar contiguo. Declaró que otras personas que también deseaban construir en el solar adyacente estaban igualmente interesadas. Declaró además que Ana Olmo estaba pasando necesidades y no estaba en condiciones de reconstruir para la época en que él le pagó $200 por el derecho, título e interés que ella pudiera tener en el solar. El hecho de que él estuviera dispuesto a pagarle y le pagara a Ana Olmo por el derecho, título o interés que ella pudiera haber tenido (con o sin conocimiento del hecho ulterior de que ella no tenía derecho, título o interés en el mismo), en el solar, y que él hacía esto debido

a que otras personas también estaban interesadas en el mismo asunto, indica claramente que el valor razonable en el mercado de los escombros no era menor de $200. Véase: 38 C. J. 1261, 1262, sec. 17 y 18.

En realidad, sin embargo, el juez de distrito no creyó la declaración de Ana Olmo ni la de Cortés al efecto de que este último no adquirió ni trató de adquirir otra cosa que el supuesto derecho, título o interés de Ana Olmo en el solar. Ésta declaró que los inquilinos que ocupaban la casa que ella dice fué destruída por el ciclón, permanecieron allí durante el huracán así como varios días después hasta que encontraron albergue en otro sitio. Creemos que el juez de distrito tenía derecho a creer toda esta parte del testimonio de Ana Olmo, no embargante el hecho de que otra prueba del demandado hubiera podido haber justificado la conclusión alternativa de que la gente a que Ana Olmo se refería no eran sus inquilinos sino refugiados que construyeron un albergue temporal en planchas sueltas de zinc galvanizado. Además, si los testigos de los demandantes decían la verdad, Cortés mismo, antes de instruir el presente recurso, admitió haber adquirido lo que quedó de la casa después del ciclón, haber completado la destrucción de la misma y utilizado parte del material en la construcción de su nueva residencia de concreto. También admitió en su contestación que había adquirido los escombros de Ana Olmo, mas negó haber utilizado parte alguna de los mismos en la construcción de su propia casa. No hallamos un error tan manifiesto en la apreciación de la prueba que justifique la revocación.

El cuarto señalamiento es que la corte de distrito cometió error al resolver que el derecho otorgado por el municipio a su supuesto cesionario era susceptible de ser transferido a los dueños sucesivos de la casa.

Hasta el presente esta corte ha asumido que el uso y ocupación de solares urbanos concedidos por los municipios

con el objeto de que se construyan en los mismos edificios permanentes de conformidad con los planos y especificaciones previamente aprobados por los municipios, pasa del vendedor al comprador a virtud de escrituras sucesivas de enajenación. Véanse los casos citados supra. La cuestión específica que aquí se trata de plantear por el apelante de acuerdo con los artículos 454 y 456 del Código Civil (edición de 1930) no ha sido resuelta. Hasta el momento del huracán los demandantes eran los dueños de la casa construída por el cesionario del municipio incluyendo la pared de hormigón o por lo menos una participación pro indivisa en la misma, en caso de que en realidad se tratara de una pared medianera. 9 Scaevola, 214, 215; 4 Manresa 393; 3 Sánchez Román 572. Después del huracán ellos eran los dueños de lo que quedó de la casa, incluyendo la pared medianera o un interés pro indiviso, suponiendo que fuera tal pared medianera. Cortés como adquirente de Ana Olmo y en su consecuencia como presunto sucesor de los demandantes, y a través de éstos del cesionario original del municipio, construyó su casa en el solar y entonces como dueño de la casa de concreto obtuvo del municipio una escritura de traspaso del solar por el precio de $1 más los honorarios del notario. Esta enajenación fué efectuada a virtud de una ordenanza municipal, cuyos artículos 1 y 2 eran así:

"Artículo 1.—Hasta el día 30 de junio de 1932, los actuales usufructuarios *bona fide* de solares urbanos de la propiedad del Municipio de Utuado podrán adquirir éstos en compra sin competencia, por la suma de cien (100) centavos, cualquiera que sea el perímetro que ocupe o zona en que radique el solar respectivo; siendo por cuenta de cada comprador los gastos de escritura; *Disponiéndose,* que el alcalde queda, por la presente, comisionado para practicar la medición y deslinde de cada solar solicitado en compra y para otorgar la escritura en cada caso a nombre del Municipio de Utuado.

"Artículo 2.—En lo sucesivo, ningún solar yermo del municipio ubicado en la primera y segunda zonas de edificaciones, podrá ser cedido en usufructo. Tales solares sólo se podrán ceder en venta al precio que estipule esta asamblea municipal al presentarse cada caso."

La sección 70 de la Ley Municipal (Leyes de 1928, pág. 391) lee en parte como sigue:

"Artículo 70.—La Asamblea Municipal podrá, a petición, conceder solares a perpetuidad, para la construcción de casas en los mismos, en las condiciones que fije aquélla en ordenanza aprobada al efecto; y, una vez concedido un solar como queda dicho, tendrá el dueño de la casa construída en él, el uso de dicho solar durante todo el tiempo que mantuviere allí un edificio en buenas condiciones, de acuerdo con los reglamentos establecidos en dicha ordenanza.

"Las Asambleas Municipales deberán especificar en las concesiones que otorgaren los derechos respectivos del cedente y del cesionario o sus sucesores respecto a la propiedad de los edificios, su reconstrucción, en los casos en que fueren destruídos o deteriorados.

"La cesión se hará necesariamente mediante ordenanza o resolución adoptada por la mayoría del número total de miembros de que se componga la Asamblea; siendo entendido que no se tomará en consideración solicitud alguna si el peticionario no la acompaña con los planos y presupuestos para el edificio que se haya de construir, sobre el solar solicitado, de modo que la asamblea pueda darse cuenta de la obra al acordar la concesión.

"El incumplimiento por parte del concesionario de las condiciones impuestas por la resolución de la Asamblea Municipal referente a cada concesión, se considerará como suficiente para la revocación de dicha concesión por el municipio, si el concesionario, a requerimiento de la Asamblea Municipal interesada, no procediere a subsanar la omisión o infracción dentro del plazo razonable que al efecto se le concede por la misma.

"Cuando la Asamblea Municipal estimare llegado el caso de tratar de la caducidad de una de estas concesiones, se citará al concesionario, con antelación de treinta (30) días por lo menos, para que comparezca ante la Asamblea y exponga su derecho, en sesión que al efecto se celebrará. Oído que sea el interesado, la Asamblea resolverá de acuerdo con la ley y de conformidad con la prueba justificada; y la resolución que adopte será firme, si el concesionario no acude en el término de treinta (30) días de notificársele la resolución estableciendo la oportuna demanda ante la corte de distrito del distrito a que el municipio pertenezca; y visto de nuevo el caso en dicha corte, la decisión de ésta será definitiva.

"Entre las condiciones de la concesión que se establezcan para cada caso, podrá figurar la del pago de un canon anual al municipio

concedente, el cual canon será por lo menos igual al importe de la contribución sobre la propiedad que correspondería a ésta, si estuviera afectada al pago de esa contribución, y en dicha concesión se estipulará, además, que cualquier edificio en la propiedad arrendada estará sujeto al pago de contribución.

"Todo concesionario de un solar edificado en virtud de concesión anterior, que interesare obtener la propiedad definitiva del solar cedídole, la podrá adquirir sin necesidad de subasta; y la Asamblea Municipal podrá así resolverlo, por medio de ordenanza en que por cada zona urbanizada se fije el tipo a que deben ser vendidos los referidos solares."

No es necesario que por ahora determinemos qué derechos pudieron haber tenido los demandantes en el solar en sí, después del huracán de 1928, en ausencia de una ordenanza del municipio de Utuado, aprobada a tenor de las disposiciones del artículo 70 de la Ley Municipal.

El quinto señalamiento es que la corte de distrito cometió error al resolver que "sea cual sea el título o la súplica de la demanda," la sentencia debe ordenar la restitución a los demandantes del valor de la casa que Cortés adquirió de Ana Olmo y que destruyó para construir la nueva, así como al fallar que Cortés no podía alegar ignorancia, porque los demandantes tenían inscrito su derecho y Ana Olmo no ofreció título alguno válido en que pudiera descansar la creencia de buena fe de que ella era la legítima dueña.

El título de la demanda no indica la naturaleza del litigio. La cuestión relativa al derecho de los demandantes a recobrar el valor de la casa que se alega fué destruída por Cortés era claramente "compatible con lo alegado en la demanda y estaba comprendido en el asunto objeto del litigio." Véase el artículo 191 del Código de Enjuiciamiento Civil. Cortés pudo haber creído de buena fe que el padre de los demandantes obtendría una autorización judicial para la enajenación de la propiedad de éstos y que entonces otorgaría escritura de venta a favor de la persona que le vendió a Ana Olmo. Él no tenía motivo alguno para creer que Ana Olmo era la dueña de la finca.

Nos inclinamos a convenir con el apelante en que no hubo base satisfactoria en la prueba para que se recobraran las rentas y que la parte demandada no debe ser condenada al pago de las costas.

*La sentencia debe ser modificada de conformidad y, así modificada, confirmada.*